**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**LISA ZEZULA**,

              Plaintiff,

vs.                                  Hon.
                                  Case No.

**LIFE INSURANCE COMPANY**
**OF NORTH AMERICA**,
a Pennsylvania corporation,

              Defendant.

_____/

## **COMPLAINT**

Plaintiff, LISA ZEZULA, through her attorneys, ILANA S. WILENKIN and FELDHEIM & WILENKIN, P.C., complains against the above-named Defendant as follows:

### **I.**       **Jurisdiction and Venue**

1)    This Court's jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§ 1132(e)(1) and 1132(f), which provisions grant this Court the jurisdiction to hear civil actions to recover benefits due under the terms of an employee welfare benefit plan.

2)      The Detroit Entertainment, LLC Health and Welfare Benefit Plan (the "Plan") consists of, *inter alia*, a long-term disability insurance plan and life insurance policy with a waiver of premium due to total disability, which is sponsored and administered by Detroit Entertainment, LLC ("Motor City Casino") and underwritten by Defendant Life Insurance Company of North America ("LINA").

3)      29 U.S.C. § 1133 provides a mechanism for the administrative or internal appeal of benefit denials.  Plaintiff ("Mrs. Zezula") has either exhausted all of her appeals or has been denied access to a meaningful and/or full and fair pre-suit appellate review.  This matter is ripe for juridical review.

4)      Pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, venue is proper in the Eastern District of Michigan.

## II.      Nature of Action

5)      This is a claim seeking long-term disability income benefits and a waiver of life insurance premiums pursuant to the Plan, which is sponsored and administered by Motor City Casino and underwritten by LINA, and which Plan was intended to provide long-term disability income benefits and ongoing life insurance coverage with a waiver of premium due

to total disability to Motor City Casino employees, including Mrs. Zezula. This action is brought pursuant to § 502(a)(1)(B) of ERISA - 29 U.S.C. § 1132(a)(1)(B).

### III.    The Parties

6)    Mrs. Zezula is 52-years-of-age.  She was, and continues to remain, a resident of Lincoln Park, Michigan.

7)    LINA is a Pennsylvania corporation conducting insurance-related business in Michigan.  Upon information and belief, LINA's resident agent for service of process is CT Corporation System, 40600 Ann Arbor Rd. East, Suite 201, Plymouth, MI  48170.

8)    During all relevant times, the Plan constituted an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and, incidental to her employment with Motor City Casino, Mrs. Zezula received coverage under the Plan as a "participant," as defined by 29 U.S.C. § 1002(7).  This claim relates to benefits due under the above-described Plan.

### IV.    Factual Statement & Medical Support

9)    Mrs. Zezula began working for Motor City Casino as a Dealer on or about 10/10/16.  Mrs. Zezula stopped working for Motor City Casino on or about 11/3/17 due to right hand and thumb pain caused by

significant A1 pulley thickening and locking that required a 4/19/18 synovectomy, tendon sheath, radical flexor tendon, palm finger each tendon.

10) Post-surgery, Mrs. Zezula continued to experience pain and dysfunction and subsequently underwent an excision of scar tissue, neurolysis right digital nerve, and radial ulnar branches, resection, which was performed by Jiab Suleiman, M.D. on 7/24/18, but she continued to experience pain, difficulty with movement, joint stiffness, right hand numbness and burning, reduced right thumb range of motion, abnormal finger grasp, and abnormal finger abduction and adduction.

11) As an insured employee under the Plan, Mrs. Zezula applied for, and LINA paid, LTD benefits beginning approximately 5/4/18 through 5/4/20.

12) At the end of Mrs. Zezula's own-occupation period, LINA denied any-occupation benefits because it determined that Mrs. Zezula retained the residual functional capacity to work as a Surveillance-System Monitor or Information Clerk.

13)    On 12/15/20, Mrs. Zezula appealed LINA's 3/17/20 claim denial and provided the following medical and functional evidence to LINA for review and consideration:

### A.    Appeal Evidence

14)    On 2/19/20, Ms. Zezula treated with Dr. Suleiman for ongoing right thumb pain.  In relevant part, Dr. Suleiman noted the following:

> The patient comes to the office today for evaluation of her right hand pain. The patient complains of thumb pain.  Lisa reports that the cause of pain was due to chronic condition. Pain is described as burning, aching and sharp. Patient also complains of numbness of the right thumb.   Patient states the pain level is 7 / 10.  The pain is constant.  Pain is exacerbated by use of hand.  Pain is relieved by analgesic medication and cortisone injection. Patient is currently taking percocet and baclofen for pain management . . .
>
> The patient admits joint stiffness and myalgia [and] the patient admits burning pain and numbness in her right hand. The patient denies dementia and paresthesias . . .
>
> The patient's chief complaint is in the right thumb. There is partial range of motion in the finger. The finger grasp is not within normal limits.  Finger abduction is not within normal limits. Finger adduction is not within normal limits.

(Ex. 1 of 12/15/20 Administrative Appeal).

15)    On 6/10/20, Ms. Zezula treated with Dr. Suleiman who noted:

> The patient comes to the office today for evaluation of her right hand pain. The patient complains of thumb pain. Lisa

reports that the cause of pain was due to chronic condition. Pain is described as aching, sharp, throbbing, burning and parasthesia.  Patient states the pain level is 7/10.
The pain is constant. Pain is exacerbated by use of hand. Pain is relieved by analgesic medication. Lisa states that she is taken Percocet 10mg, Gabapentin and motrin for pain . . .

The patient's chief complaint is in the right thumb. There is partial range of motion in the finger. The finger grasp is not within normal limits.  Finger abduction is not within normal limits. Finger adduction is not within normal limits.

(Ex. 1 of 12/15/20 Administrative Appeal).

16)   On 9/16/20, Mrs. Zezula returned to Dr. Suleiman and voiced the same complaints.

17)   On 12/10/20, Dr. Suleiman prepared a narrative report on Mrs. Zezula's behalf.  In relevant part, Dr. Suleiman opined as follows:

After evaluating her and noting that she had a nerve injury, I recommended basically exploring her nerve and resecting all this scar tissue in her finger, specifically in her right thumb. She is a right-band-dominant woman. . . .

Her physical exam as of the last visit shows decreased two-point discrimination on her right thumb. Her range of motion in the interphalangeal joint and the MCP joint of her right thumb are almost full.   There is no triggering noted in her thumb.  Extension is full.  Flexion is almost full as of last visit and no other deficits are noted.  Her gripping is slightly less than her left side.

Ms. Zezula was referred to Dr. Anthony Watson by her disability insurance Cigna who recommended that she

attempt to work without restrictions and that she was at
maximal medical improvement and she does not need any
further treatment.  As of her last visit with me, her evaluation
was noted above, and **I had kept her off of work became of
the type of work that she does and the repetitive work that
she does as a dealer**.

Her job offered her new job: to do surveillance/monitor
operation employee or to work at the information desk.  **As of
her last visit which was October 14, 2020, my
recommendations were to keep her on restrictions, and as far
as my restrictions, I would recommend that she avoid any
repetitive type motion with her right hand and prevent lifting
more than 10 pounds**. To specifically offer her a job at this
point, whether it is a surveillance system monitor or
information desk operator, it would require her to do a
functional capacity evaluation by a professional
functional capacity evaluation expert.  My recommendation is
that she go to Advantage OT, occupational therapy to get an
evaluation to see exactly what she can and cannot do before
any further recommendations are made.

(Ex. 2 of 12/15/20 Administrative Appeal). (emphasis added).

18)   On 1/29/21, Mrs. Zezula attempted to participate in a

Functional Capacity Evaluation, the therapist stopped the exam due to Mts.

Zezula's rapid heart rate:

Ms. Zezula demonstrated guarding and limiting behaviors
completing limited testing during this assessment.  Multiple
testing tasks were not completed (due to her resting HR at 100
BPM or higher) which limited this assessment and its purpose
to assist in determining Ms. Zezula's functional capacities
and/or limitations.  This evaluation cannot determine with any
degree of accuracy Ms. Zezula's physical capacities in relation

> to performing work activities and right hand physical
> capacities. . . .
>
> As a precaution: clients whose resting HR is above 100 are
> asked to have physician clearance before completing the FCE.
> Ms. Zezula was asked to see her treating physician to obtain
> clearance as a precaution to complete FCE testing due to this
> and per her reported history of A-fib and Ablation procedures.

(LINA/Zezula Claim File).

19)    On 4/22/21, Mrs. Zezula provided LINA with a copy of the

therapist's report.

20)    On 4/22/21, Mrs. Zezula provided LINA with updated cardiac-

related records that were authored by Nour S Juratli, M.D. (cardiology-

electrophysiology).

21)    On 4/22/21, Mrs. Zezula provided LINA with Dr. Suleiman's

3/18/21 report in which he opined:

> Lisa was seen recently regarding her thumb injury that she
> sustained at work and she required two procedures by myself
> and prior to that as I documented in my prior evaluation. I was
> asked to do an assessment of her disability and how much
> dysfunction that she has that she will be able to return to
> work or not in any capacity. I have recommended that she go
> and do a functional capacity evaluation and she could not
> basically complete the functional capacity evaluation due to a
> medical condition. Therefore, I was asked to make another
> statement with reference to her condition and her ability to
> work and function with her thumb needing another
> procedure. At this point, she does still need another

procedure on her thumb and I am not able to make any judgment or decisions as far as the functional capacity of her hand and how much she can and cannot do until a functional capacity evaluation is performed.

(LINA/Zezula Claim File).

22)    On 6/28/21, LINA denied Mrs. Zezula's claim/administrative appeal as follows:

We understand that Ms. Zezula continues to have symptoms of chronic pain resulting from the right thumb pain. The conclusion outlined above agrees that Ms. Zezula is functionally limited. However, the medical reviewer concluded that Ms. Zezula does have a capacity for physical demand that is consistent with sedentary activities. As a result, your client would no longer satisfy the definition of disability of being unable to perform 'any occupation.' Therefore, no further LTD benefits would be payable beyond May 3, 2020 at this time.

(LINA/Zezula Claim File).

23)    LINA's actions have now foreclosed all avenues of administrative appeal and this matter is ripe for judicial review.

24)    Valid, objective, and well-supported proofs establish that Mrs. Zezula has met, and continues to meet, the Plan's definition of disability for LTD benefits and a waiver of life insurance premium purposes as of 5/3/20 through the Plan's maximum benefit periods for each respective benefit.

**WHEREFORE**, based upon the preceding reasons, Plaintiff prays for the following relief:

A)    That this Court enter judgment in Mrs. Zezula's favor against LINA and order the immediate payment of long-term disability benefits as well as a waiver of life premium;

B)    That this Court order LINA to pay Mrs. Zezula prejudgment interest pursuant to *Horn v. McQueen*, 353 F. Supp. 2d 785 (2004) and post-judgment interest in accordance with M.C.L. § 600.6013 and 600.6455;

C)    That this Court award attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

D)    That Mrs. Zezula recover all relief to which he may be entitled, along with the costs of litigation.

Respectfully submitted:

**FELDHEIM & WILENKIN, P.C.**

By:    <u>s/Ilana S. Wilenkin</u>
Ilana S. Wilenkin (P61710)
Plaintiff's attorney
30300 Northwestern Highway, Suite 108
Farmington Hills, MI 48334-3255
(248) 932-3505; fax (248) 932-1734
ilana@lawsmf.com

Dated:  June 30, 2021